†MARGARET KESSLER v. E. J. LETTS.

FENCE CUTTING OFF LIGHT AND AIR OF ADJOINING PROPRIETOR.

Where one erects on his own land a board fence designed for no purpose of either ornament or use, so high and so close to a house on an adjoining lot as to exclude light and air from the windows of the house, and thus become a nuisance, an injury and a damage to said house, and the only purpose in erecting the fence is to injure the neighbor and his property, and it is erected from motives of unmixed malice towards the neighbor who is damaged thereby, such person will be enjoined from erecting such a fence.

Error to the Court of Common Pleas of Cuyahoga county.

CALDWELL, J.

The plaintiff avers in her petition that she is the owner of a lot under a land contract, upon which is a house, which she occupies as her home and for a boarding-house and hotel. That the defendant owns a lot adjoining her lot, and he has erected and is erecting on his lot, and up against her building, upon his own lot, a very high fence extending up to the eaves and gables of her house, and that the fence excludes the light and air from her house. She avers also that she and the defendant of late have had some dispute leading to litigation; that the fence is not built by the defendant for any useful or ornamental purpose, but he has placed said fence over plaintiff's windows for the express and malicious purpose of annoying this plaintiff, and to exclude the light and air from said windows, and to render uninhabitable said house, and to injure the value thereof. She avers that said board wall is an intolerable nuisance, and is placed there from malice alone against this plaintiff.

This petition being demurred to, we are to take as true that this fence is built wholly on the defendant's land, close up to plaintiff's house, built for no useful or ornamental purpose; is erected from pure malice, and is injurious to plaintiff's property, and diminishes its value. It is claimed by counsel for defendant, that the defendant has done nothing unlawful, has violated no legal right of plaintiff. and hence the motive that induced defendant to build the fence is a matter the court cannot consider.

It is true that a large majority of courts hold that an act legal in itself, violating no legal right, cannot be made actionable, even though it is prompted by malice and is prejudicial and injurious to others. Other courts of equal ability have held that if one does an act, wholly on his own land, legal but prejudicial to his neighbor, not for his own ornament or profit, but through unmixed malice to his neighbor, then he has done his neighbor an injury that is actionable. 74 Me., 164; 7 House of Lords, 387; 18 Pick., 117; 25 Penn., 548; 20 Conn., 533; 29 Pa., 559.

Most of these are cases where a party had on his own premises a spring, and his neighbor dug a ditch wholly on his own land, in such a manner as to drain the spring and deprive him of the use of it; not for any use or purpose of his own, but purely through malice.

---

†This judgment was reversed by the supreme court. See opinion, 54 O. S., 73. Cited in Dawson v. Kemper, 1 Ohio Dec , 556, 557.

It has been attempted to distinguish between cases like the above, and a case where a party is thus deprived of light and air. It is true that in Ohio no right to light and air coming over adjoining property can be gained by prescription. Neither has one any right to the water of a spring on his own land, as against his neighbor, who, by a ditch upon his own land, drains the spring in the improvement of his own estate or for his own use. But if his only purpose is malice to the owner of the spring, then he has done his neighbor injustice, and the above cases hold his act is actionable.

The case cited from 69 Mich., 380, is that of a high board fence, much like the one in this case. In that case the defendant was compelled by the court to take the fence down.

The supreme court of Ohio has never passed directly upon this question. In Frazier v. Brown, 12 O. S., 294, the court raises a query as to what the law should be in a case like this. They did not decide it, nor was it involved in the case. It is an old rule of law that one shall use his own property so as not to injure another. Under this maxim one cannot carry on business on his own property that endangers the property of his neighbor, or that makes the atmosphere impure, unwholesome or disagreeable, or that produces disagreeable noises disturbing in their nature to the quiet and health of the neighborhood. It is said that the element of disturbance in all these cases that becomes actionable, is, that something passes from the premises of one to another, as noise, unpleasant and unwholesome odors, smoke, gas, etc.

Smoke shuts out the sun; so does this fence by its dark shadow cast upon plaintiff's land. Offensive gases contaminate the atmosphere. This fence does the same to some extent by confining it between it and plaintiff's house. Heavy noises affect the nerves through the sense of hearing. This fence is unsightly, and is intended to injure. These elements are so near akin to the foregoing acts that are actionable, that they appeal with almost irresistible force to the equity side of a court, when done through unmixed malice.

It is admitted it is immoral, does not conform to the golden rule of action toward others, is contrary to all notions of equity. But that it is lawful, violates no right, and hence the courts must keep hands off. This claim completely ignores equity. Our code has completely united law and equity under a new name called "civil action." Long ago the courts commenced on their own accord to introduce principles of equity to tone down the severity of many of the old rules of law. These principles grew in time to be co-equal and co-extensive with the law. They are still growing and finding many new applications. The practice grew up of applying purely legal rules to legal actions, and applying equitable principles only in equitable actions. Under this practice, where the court felt the hamper of the law so called, many rules received a most equitable application; just such is the one contended for by the counsel for the defendant in this case. Under the "civil action" of our code this embarrassment of the courts is entirely removed. The courts of this state can in every "civil action" apply the principles of equity as freely as they do the law. Very many of the courts, that have held it lawful for one to build anything on his own premises injurious to an adjoining neighbor, of no use to himself and built through bad motives, have declared such a rule most inequitable, and yet have felt compelled to follow the iron rule of the law.

That one may erect anything on his own land for no use or ornament, but purely to injure his adjoining neighbor seems to this court to be a monstrous doctrine, one most offensive to the principles of equity. It is most unjust. It fosters and cloaks with a false mantle of justice, wrong, malice, and a malignant and wanton injury to another. A majority of this court are of the opinion that by the terms of this petition the defendant is doing the plaintiff an injustice, through no use of his property for his own benefit or pleasure, but purely through

malice toward the plaintiff, and that such action on his part is within the reach of the principles of equity as applied under our system of practice.

The demurrer to the petition is by a majority of the court overruled.

BALDWIN, J. (dissenting).

I voted in the minority in this case, although I cannot dissent very heartily in this bald and extreme case, so forcibly stated and argued by Judge Caldwell. Still, the decision seems to me contrary to principle and dangerous in precedent. In this case it is conceded that the plaintiff has no right to the light and air over the premises of the defendant, and that no right of hers is infringed upon.

Yet she must have a clear right to the injunction, or it should not be granted. Spangler v. Cleveland, 43 O. S., 526.

Indeed, giving a remedy is establishing a right and protecting it.

The plaintiff's case, baldly stated, appeals strongly to sympathy, but it may be remembered that if she suffers by loss of light and air, she or her predecessors built upon the boundary line, in such a manner as made those premises dependent upon defendant for the enjoyment of light and air.

If the wrongs inflicted upon plaintiff are so clear as to entitle her to an injunction, her damages from the act of the defendant (substantial, no doubt), ought to be recoverable before a jury.

My sympathy at first was with plaintiff, but it seemed to me, on reflection, that to make the right of plaintiff to the enjoyment of that light and air, (to which she had confessedly no right), dependent upon the motives of defendant, to be determined by a preponderance of the evidence before either court or jury, might well lead, especially before sympathizing juries, to danger and to the practical partial overruling of the doctrine that there is no right of prescription or use to the light and air over adjoining premises, Mullen v. Stricker, 19 O. S., 135, and even lessening to a minimum the period of prescription.

Indeed, it seems to me that the supreme court gave intimation of opinion when in the case already referred to, Frazier v. Brown, 12 O. S., 294, 311, the court say, at the close of the opinion:

"And as an act, unlawful in itself, resulting in an injury to another, whatever may have been the motive with which it was done, is none the less the subject of redress; so the act done, to-wit, the using of one's own property, being lawful in itself, the motive with which it is done—whatever it may be as a matter of conscience—is in law a matter of indifference."

Estep, Ford & Estep, attorneys for plaintiff.

L. A. Wilson, attorney for defendant.

---

¶13                              [Franklin Circuit Court, January Term, 1893.]